**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| NOVO NORDISK INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-837-JDK |
| | § | |
| AXTELL'S RITE-VALUE | § | |
| PHARMACY, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS**

Novo Nordisk Inc. alleges that Axtell's Rite-Value Pharmacy, Inc., is violating state law by marketing and selling drugs unlawfully compounded with semaglutide without Food and Drug Administration ("FDA") approval. Before the Court is Axtell's motion to dismiss. Docket No. 10. For the reasons stated below, the motion is denied.

**I.**

Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only weight-loss medicines: Rybelsus, Wegovy, and Ozempic. Docket No. 1 at ¶ 2. According to Novo Nordisk, these three medicines have been extensively studied in clinical trials and are FDA-approved for the treatment of patients with serious chronic diseases. *Id.* ¶ 7. Further, Novo Nordisk is the only company in the United States authorized to sell FDA-approved products containing semaglutide—the FDA has not approved any generic versions of semaglutide medicines. *Id.* ¶¶ 8–9.

1

Novo Nordisk alleges that Axtell nevertheless markets and sells products claiming to contain semaglutide that are "unapproved and untailored to patient needs." *Id.* ¶ 12. Axtell's conduct allegedly violates various state laws requiring "drug manufacturers to demonstrate that their drugs are safe and effective" and prohibiting "manufacturers from producing compounded drugs that are untailored to patient needs." *Id.* ¶¶ 13–14. Indeed, according to Novo Nordisk, Axtell's activities "violate several state unfair competition laws by selling unapproved drugs that are essentially copies of Novo Nordisk's FDA-approved drugs." *Id.* ¶ F.1. "Under the laws of California, Colorado, Florida, Georgia, Hawaii, Illinois, North Carolina, Texas, and Tennessee, a new drug may not be introduced or delivered for introduction into commerce unless an application approved by FDA under section 505 of the FDCA [Federal Food, Drug, and Cosmetic Act] is in effect for the drug." *Id.* ¶ 42 (citing state laws).

Axtell's conduct, moreover, has allegedly injured Novo Nordisk by interfering with the company's ability to conduct its business. *Id.* ¶ 64. "Specifically, Defendant's marketing and sale of unapproved and untailored drugs to customers harms Novo Nordisk because Novo Nordisk, as the only company in the United States with FDA-approved products containing semaglutide, undergoes rigorous testing to ensure its products are the correct potency and do not contain harmful levels of impurities, while Defendant can undercut Novo Nordisk on price by foregoing steps to ensure its products are safe and effective for customers." *Id.* Further, because "semaglutide is synonymous with Novo Nordisk, patients who have negative experiences from

2

Defendant's compounded 'semaglutide' may erroneously view Novo Nordisk as the cause of those negative experiences." *Id*. ¶ 66.

Novo Nordisk brought this suit on August 4, 2025, alleging violations of the following unfair-competition laws:  California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq*.; Colorado Consumer Protection Act, COLO. REV. STAT. §§ 6-1-105, *et seq*.; Colorado "Common Law of Unfair Competition"; Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201, *et seq*.; Georgia Uniform Deceptive Trade Practices Act, GA. CODE ANN. §§ 10-1-370, *et seq*.; Hawaii Unfair and Deceptive Acts and Practices Act, HAW. REV. STAT. §§ 480-1, *et seq*.; Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILL. COMP. STAT. 505/1, *et seq*.; North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, *et seq*.; Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-104(b)(43)(C); and Texas "Common Law of Unfair Competition."

On October 9, 2025, Axtell moved to dismiss all claims for (1) lack of standing and subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and (2) failure to state a claim under Rule 12(b)(6).  Docket No. 10.

## II.

Under Rule 12(b)(1), a court may dismiss a case for lack of subject-matter jurisdiction when the plaintiff has no standing.  FED. R. CIV. P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A defendant may raise defects in the Court's subject-matter jurisdiction at any time. *See* FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  When

a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden to establish subject-matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court should grant a Rule 12(b)(1) motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n of Miss.*, 143 F.3d at 1010). If the defendant attacks jurisdiction based solely on the allegations of the complaint, the plaintiff's factual allegations are presumed to be true for purposes of deciding the motion. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Such motions "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). In deciding a Rule 12(b)(6) motion, a court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020) (citation omitted). Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must "make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate only if the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations

4

in the complaint." *Muhammad v. Dallas Cty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

### III.

Axtell argues that the Court lacks subject-matter jurisdiction because Novo Nordisk does not have standing to bring this lawsuit. Docket No. 10 at 23–25. As explained below, the complaint adequately alleges standing.

Article III standing requires a plaintiff to plead and prove "an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Here, Novo Nordisk alleges that Axtell's marketing and selling drugs with semaglutide have caused—and continue to cause—Novo Nordisk to lose sales and customers and to suffer harm to its goodwill and reputation. Docket No. 1 at ¶¶ 62–67. Such financial and reputational harm is the kind of concrete and actual injury that is redressable by a favorable ruling. *See Lexmark Int'l, Inc. v. Static Control*

5

*Components, Inc.*, 572 U.S. 118, 125 (2014) (noting that "allegations of lost sales and damages to [a plaintiff's] business reputation" are harms sufficient to create Article III standing); *see also Novo Nordisk A/S v. Lifermxd*, 2026 WL 222214, at *3 (D.N.J. Jan. 3, 2026) ("Allegations of consumer confusion, loss of goodwill, and reputational harm are sufficient to plead an injury in fact and confer standing under Article III."); *Novo Nordisk, Inc. v. DCA Pharm.*, 745 F. Supp. 3d 626, 630 (M.D. Tenn. Aug. 15, 2024) (holding that Novo Nordisk had standing based on allegations similar to those here because one can "reasonably infer that any sale by Defendant reduces, and will continue to reduce, [Novo Nordisk's] individual profits").

Axtell argues that its customers are "not in the market for Novo's FDA-approved drugs" because they are patients seeking a specialized compounded product. Docket No. 10 at 24. Axtell also argues that medical providers prescribing its drugs are "intervening factor[s]," and thus "any loss of customers" by Novo Nordisk is not redressable here. *Id.* at 24. But Novo Nordisk has alleged that Axtell's "drugs are essentially copies of Novo Nordisk's semaglutide drugs" and are *not* "tailor[ed] to a specific patient need." Docket No. 1 at ¶¶ 57, 60–61. And Novo Nordisk is the only company selling FDA-approved semaglutide drugs. *Id.* ¶¶ 8–9. Thus, absent Axtell's allegedly unlawful actions, the sales made by Axtell "would and will have been made by Novo Nordisk." *Id.* ¶ 67. An injunction prohibiting all sales of Axtell's semaglutide products, moreover, would redress Novo Nordisk's injury. *Reule v. Jackson*, 114 F.4th 360, 368 n.4 (5th Cir. 2024) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367,

381 (2024)) ("If a defendant's action causes an injury, enjoining the action . . . will typically redress that injury.").

Finally, Axtell argues that Novo Nordisk's "assertion of harm to its reputation and goodwill" is "barebones." Docket No. 10 at 25. The complaint, however, alleges "a common association by consumers of compounded semaglutide products like Defendant's and Novo Nordisk's," that "semaglutide is synonymous with Novo Nordisk," and that patients who have adverse experiences may "erroneously view Novo Nordisk as the cause." Docket No. 1 at ¶ 66. That is sufficient at the pleading stage. *DCA Pharm.*, 745 F. Supp. 3d at 630 (holding that Novo Nordisk had Article III standing based on similar allegations of harm to its reputation and goodwill from another company selling unapproved semaglutide drugs).

## IV.

Axtell also argues that the complaint should be dismissed for failure to state a claim under Rule 12(b)(6). In particular, Axtell contends that Novo Nordisk's claims are preempted and barred as a matter of law, that Axtell's conduct is protected by state-law safe harbors, and that the complaint fails to adequately allege any state-law violations. For the reasons stated below, the Court concludes that each of these arguments lacks merit.

## A.

Axtell first argues that Novo Nordisk's claims are "preempted by the nine states' laws expressly permitting compounding." Docket No. 10 at 14–16. Although the nine states at issue here prohibit selling non-FDA-approved drugs, Axtell

contends, these states permit the practice of compounding, which is all Axtell is doing here. *Id.*

The complaint, however, does not allege that Axtell engages in lawful compounding. It alleges the opposite—that Axtell is manufacturing, marketing, and selling new drugs that are not FDA-approved. Docket No. 1 at ¶ 54. And the complaint adequately alleges that this conduct violates the laws of nine states. *Id.* ¶¶ 41–54. Although Axtell may later prove that it was in fact lawfully compounding drugs under state law, at this stage in the proceeding, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman*, 982 F.3d at 955; *Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 331 n.2 (5th Cir. 2025) (holding that at the motion-to-dismiss stage, courts cannot draw factual inferences in the defendant's favor to find compliance with federal compounding laws).

**B.**

Axtell next argues that the states' "drug safety laws" lack a private right of action, and thus Novo Nordisk, "as a private party, cannot enforce [them]." Docket No. 10 at 16–19. In fact, Axtell contends, eight of the nine states provide state agencies with discretion to decline enforcement for "minor violations" when the public interest is better served by a written notice or warning. *Id.* at 17 (citing, *e.g.*, CAL. HEALTH & SAFETY CODE § 111845).

Novo Nordisk, however, is not alleging violations of the "drug safety laws," but rather violations of state unfair-competition laws, each of which expressly creates

private rights of action.  And the Fifth Circuit, among other courts, has held that "competitors may bring suit under traditional state unfair-competition law" against parties that violate state statutes banning the sale of unapproved drugs.  *Zyla Life Sciences*, 134 F.4th at 331.  Permitting such private actions in no way means that "the States have [] forfeited their traditional prerogative to police drug safety."  *Id.* at 330; *see also, e.g., Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 55 (N.C. App. 2007) ("[T]his Court has repeatedly held that the violation of regulatory statutes which govern business activities may also be a violation of [the North Carolina unfair-competition statute] whether or not such activities are listed specifically in the regulatory act as a violation of [the unfair-competition statute].").  As one court explained, "[e]ven if the violation of another law does not create a private right of action, if the violation constitutes unfair competition, it is actionable."  *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 242 (Cal. Ct. App. 2006).

## C.

Axtell argues that its activities are protected under the states' "safe harbor" laws.  Docket No. 10 at 19–21.  These "safe harbors" clarify that the state consumer protection statutes do not apply to conduct explicitly permitted by state or federal law.  *See, e.g.*, FLA. STAT. § 501.212(1) ("[The Florida Deceptive and Unfair Trade Practices Act] does not apply to . . . [a]n act or practice required or specifically permitted by federal or state law."); COLO. REV. STAT. § 6-1-106(1)(a) ("[The Colorado Consumer Protection Act] does not apply to . . . [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental

agency[.]"); *Pinney v. State Farm Mut. Ins. Co.*, 552 S.E.2d 186, 192 (N.C. Ct. App. 2001) (recognizing that an act authorized by state law is not an "unfair act"). And because it was lawfully compounding drugs, Axtell contends, its activities fall within these "safe harbors."

An affirmative defense such as a "safe harbor" may be adjudicated as a matter of law on a motion to dismiss only if it is "apparent from the plaintiff's own allegations that a defense is fatal to the claim." *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (citation modified). "In other words, the pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Id.* (quoting *Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991)). Examples of such clear-cut affirmative defenses include "absolute and qualified immunity, statute of limitations, statute of frauds, laches, or res judicata." *Id.* at 320.

Here, it is not facially apparent from the complaint that Axtell's conduct falls within a "safe harbor." Novo Nordisk alleges that Axtell is marketing and selling non-tailored drugs without FDA approval, in violation of state laws. *See, e.g.*, Docket No. 1 at ¶ 12 ("Defendant markets and sells to patients products claiming to contain semaglutide that are unapproved and untailored to patient needs. These business practices are unlawful."). If true—and the Court assumes all allegations are true at this stage, *see Thurman*, 982 F.3d at 955—such conduct is not protected under the "safe harbor" laws, which protect only conduct permitted by state law. *See, e.g.*, *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*

*Ltd.*, 796 F. App'x 919, 922 n.44 (9th Cir. 2019) (affirming dismissal of a Florida unfair-competition claim because plaintiffs alleged that defendants violated drug-labeling laws, which is conduct not "specifically permitted" and therefore not subject to the "safe harbor" defense); *see also EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (holding that a claim should not have been dismissed where the complaint failed to plead that the affirmative defense applied).

**D.**

Axtell next argues that the Federal Food, Drug, and Cosmetic Act ("FDCA") precludes "any non-federal enforcement of the drug-related provisions of the FDCA." Docket No. 10 at 21–23 (citing 21 U.S.C. § 337(a)). According to Axtell, to avoid this provision, "Novo [Nordisk's] claim must rely on a violation of state law that does not depend on the FDCA for resolution." *Id.* at 21.

Axtell once again fails to grapple with *Zyla Life Sciences*. In that case, the Fifth Circuit explained that many states "have decided to mirror federal law by making it illegal to sell any new drug that has not been approved under [the FDCA]." 134 F.4th at 130–31. This is exactly what Novo Nordisk has alleged here. Docket No. 1 at ¶ 42. Further, "[i]f anyone sells drugs in violation of these state laws, competitors may bring suit under traditional state unfair-competition law." *Zyla Life Sciences*, 134 F.4th at 331. Again, this is what Novo Nordisk is doing here, bringing suit under unfair-competition laws based on Axtell's alleged misconduct causing Novo Nordisk harm. *Cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)

11

(holding that the FDCA preempted state fraud claims only because the company attempted to use state law to vindicate a wrong committed against the Federal Government).

### E.

Finally, Axtell argues that Novo Nordisk's allegations are factually insufficient.  Docket No. 10 at 25–26.  The Court disagrees.

Axtell asserts that the complaint "does not describe [its] compounded drug[]; how it is packaged, labeled, shipped, or marketed," nor "the circumstances under which that drug was prescribed, purchased, or obtained."  *Id.*  The complaint satisfies the notice-pleading standards of the Federal Rules.  *See* Docket No. 1 at ¶¶ 41, 53–57, 60–67.  Although some of the allegations are "based upon information and belief," the complaint adequately "set[s] forth a factual basis for such belief."  *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Axtell also argues that Novo Nordisk fails to allege consumer injury as required by the unfair-competition statutes of California, Colorado, Florida, Illinois, and Tennessee.  Docket No. 10 at 26–27.  But consumer injury as envisioned by Axtell is not a requirement under these laws.  *See In re Firearm Cases*, 126 Cal. App. 4th 959, 978 (Cal. App. 4th 2005) (California's unfair-competition statute requires "evidence of a causative link between the unfair act and the injuries or damages," not consumer injury); *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (interpreting

12

Colorado's unfair-competition statute as requiring only that the challenged practice "significantly impact[] the public as actual or potential consumers of the defendant's goods, services or property[.]"); *CEMEX Constr. Material Fla., LLC v. Armstrong World Indus., Inc.*, 2018 WL 905752, at \*15 (M.D. Fla. Feb. 15, 2018) (Florida's unfair-competition law requires proof that the defendant's conduct is *likely* to cause consumer injury); *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1051 (N.D. Ill. Sep. 30, 2017) (Illinois's law requires evidence of "a connection between the alleged misconduct and the wider marketplace, as well as a connection between the requested relief and consumers generally"); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116–17 (Tenn. Ct. App. 2005) (Tennessee's unfair-competition statute requires that a defendant's conduct is *likely* to cause substantial consumer harm).  The complaint here, moreover, sufficiently alleges the causation or harm elements required by these statutes.  *See* Docket No. 1 at ¶¶ 26, 28, 31–34.

Axtell argues that Novo Nordisk's claim under the Hawaii unfair practices law is insufficient because the complaint fails to allege that Axtell's actions negatively affected competition.  Docket No. 10 at 28.  But the complaint alleges that Axtell has avoided the steep costs of FDA approval, *id.* ¶ 23, and "undercut[s] Novo Nordisk by price" by selling the unapproved drugs cheaper, *id.* ¶ 64, which likewise negatively affects competition.  *See Gurrobat v. HTH Corp.*, 323 P.3d 792, 814 (Haw. 2014) (evidence that a defendant offered "lower base prices" because of its unlawful conduct would show that the conduct negatively affected competition); *Eli Lilly & Co. v.*

*Revive Rx, LLC*, 812 F. Supp. 3d 708, 732 (S.D. Tex. Dec. 15, 2025) (similar); *Park v. Haw. Med. Serv. Ass'n*, 582 F. Supp. 3d 760, 770 (D. Haw. 2022) (similar).

Lastly, Axtell argues that the claim brought under North Carolina's unfair-competition law should be dismissed because it is shielded by the "learned profession" exemption. Docket No. 10 at 29 (citing N.C. GEN. STAT. § 75-1.1(b)). But the complaint adequately alleges that Axtell is unlawfully manufacturing and selling unapproved drugs, which is not covered by the exemption. *See Sykes v. Health Network Sols., Inc.*, 828 S.E.2d 467, 472–73 (N.C. 2019) (exemption does not apply to a "member of a learned profession" whose activities are far from the professional practice); *see also Eli Lilly*, 812 F. Supp. 3d at 746 (applying North Carolina's learned profession exemption and noting the difference between "compounding, which . . . is a traditional practice by pharmacists, and manufacturing, which is not a professional service.").

## IV.

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss (Docket No. 10).

So **ORDERED** and **SIGNED** this **10th** day of **June, 2026.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

14